FILED
2014 Jun-05  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SOPHIA MCCOLLOUGH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 2:13-CV-1551-VEH** |
| | ) | |
| INSIGHT CAPITAL, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## MEMORANDUM OPINION

### INTRODUCTION

The defendant (Insight) has filed a Motion to Dismiss. It seeks to dismiss all claims the plaintiff (Ms. McCollough) filed in her original and Amended Complaint.

Insight is a "payday" lender that extended a series of short-term loans to Ms. McCullough over the course of 2011-12. Ms. McCullough claims that Insight's conduct during this period violated the federal Truth in Lending Act (TILA), the Alabama Deceptive Trade Practices Act (DTPA),[1] and an injunction filed by an Alabama state-court judge in a separate case against Insight. She also claims that Insight fraudulently suppressed and misrepresented certain material facts in its

---

[1] In the course of litigating the present Motion to Dismiss, Ms. McCullough has voluntarily withdrawn her two DTPA-related claims. Docs. 24 at 6, 25 at 6.

dealings with her. These claims target Insight's disclosures – or lack thereof – in several loan agreements she signed with the company over 2011-12.

In its present Motion, Insight argues that Ms. McCullough has failed to state any facts that – even if true – would secure her legal relief. The court disagrees in part. Ms. McCullough has plausibly alleged a misleading disclosure in violation of TILA. However, she has otherwise misconstrued the statute, and her other two allegations under it are invalid. She has also misinterpreted federal and Alabama law regarding injunctions and deferred presentment arrangements of the kind she voluntarily entered. Finally, she has not plausibly claimed that Insight defrauded her in any way. The court will therefore **GRANT in part and DENY in part** Insight's Motion to Dismiss the claims made in her original and Amended Complaint.

### STANDARD OF REVIEW

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly (Twombly)*, 550 U.S. 544, 570 (2007).[2]

---

[2]Ms. McCullough repeatedly misstates the proper standard of review in her filings before this court. She states, "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal (Iqbal)*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

---

would entitle him to relief." Doc. 16 at 2 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (alterations in original). This is inaccurate. Seven years ago, the Supreme Court, in *Twombly*, flatly rejected *Conley*'s applicability to Rule 8 pleading requirements. *See* 550 U.S. at 562-563 (stating that *Conley*'s "no set of facts" language had "earned its retirement"); *accord Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714 (11th Cir. 2014) (observing that *Conley*'s "no set of facts" language had been "categorically retired" by the Supreme Court in *Twombly*). The Court instead substituted the plausibility standard outlined above as the proper measure in this arena.

## PRELIMINARY ISSUE: STATUTE OF LIMITATIONS

Before the court may consider Insight's Motion, it must first discern the scope of its analysis. Ms. McCullough claims that she entered into roughly 40 "Alabama Deferred Presentment Arrangements" with Insight between January 2011 and October 2012. *See, e.g.*, Doc. 1 ¶ 13(b). She has attached a timeline to her Complaint that lists the dates on which these agreements were formed. Doc. 1-1 at 11.[3] TILA has a statute of limitations provision that requires a plaintiff to file his or her case "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (emphasis added).

Ms. McCullough filed her Complaint on August 22, 2013. Doc. 1. She alleges that Insight violated TILA through the disclosures it made – or failed to make – on these agreements when she signed them. The court therefore finds as a matter of law that TILA bars consideration of any claims arising from contracts she signed with Insight before August 22, 2012. After reviewing her attached timeline, the court finds

---

[3]When considering a Rule 12(b)(6) Motion, a district court is generally "constrained to review the allegations as contained within the four corners of the complaint." *Crowell v. Morgan, Stanley, Dean Witter Servs. Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000) (citations omitted). However, a court may consider documents attached to such a motion if they are (1) referred to in the complaint and are (2) central to the plaintiff's claim. *Starship Enters. of Atlanta, Inc. v. Coweta County, Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) (citation omitted). Because Ms. McCullough has referred to this timeline in her Complaint and because it is incontestably central to her TILA claims, this court will consider it here.

that it will thus only consider the agreements she formed with Insight on the following dates: August 24, 2012; September 7, 2012; September 21, 2012; and October 20, 2012. *See* Doc. 1-1 at 11. Ms. McCullough has also attached these four agreements (in their presumable entirety) to her Complaint. Doc. 1-1 at 7-10. So, the court will rely upon these reproductions in deciding the present Motion.

**DISCUSSION**

**I.    Ms. McCullough Has Plausibly Stated a Single TILA Claim.**

In her Complaint, Ms. McCullough claims that Insight violated TILA in three respects: (1) by inaccurately stating in the loan agreements that it was holding her personal checks as security; (2) by misrepresenting its identity on these agreements; and (3) by disclosing excessive information in these agreements. The court finds that only the first claim is plausible.

> **A.    *Ms. McCullough has plausibly alleged that Insight's loan agreements inaccurately described how it would treat her checks.***

TILA, 15 U.S.C. §§ 1601-67f, "is a consumer protection statute that seeks to 'avoid the uninformed use of credit' through the 'meaningful disclosure of credit terms,' thereby enabling consumers to become informed about the cost of credit." *Tribble v. Deutsche Bank Nat. Trust Co.*, No. 13-80938-CIV, 2014 WL 186126, at *2 (S.D. Fla. Jan. 6, 2014) (quoting 15 U.S.C. § 1601(a)); *see also Mourning v.*

5

*Family Publ'ns Serv., Inc.*, 411 U.S. 356, 377 (1973) ("The Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'"). "Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations." *Tribble*, 2014 WL 186126, at *2 (citing 15 U.S.C. § 1640(a)). "In essence, a creditor is liable under TILA if the disclosure of the credit terms is inaccurate or misleading." *Hahn v. McKenzie Check Advance of Ill., LLC*, 61 F. Supp. 2d 813, 815 (C.D. Ill. 1999). "[A]n objective standard is used in determining violations of TILA." *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980).[4] In other words, "[i]t is not necessary that the plaintiff-consumer actually have been deceived in order for there to be a violation." *Id.* (citing *McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978)). Moreover, "the applicable standard is strict compliance with the technical requirements of the Act." *Id.* "Only adherence to a strict compliance standard will promote the standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives." *Id.* (citations omitted); *accord Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1181 (11th Cir. 1982). To that end, courts should liberally construe TILA in the

---

[4]This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

consumer's favor to best effect the legislation's goals. *Williams v. Pub. Fin. Corp.*, 598 F.2d 349, 355 (5th Cir. 1979) (citation omitted).

Ms. McCullough claims that Insight violated TILA's disclosure requirements in the loan agreement forms the lender had her sign. In an outlined box at the top of each of the four relevant contracts, a line reads as follows:

> SECURITY: Lender takes and holds the Customer's check under the Alabama Deferred Presentment Services Act.

Doc. 1-1 at 7-10. According to Ms. McCullough, because the Deferred Presentment Services Act (DPSA) forbids holding her check as security, this statement is a misleading disclosure in violation of TILA. Doc. 1 ¶ 13(a). Given the strict compliance standard outlined above, this claim is sufficiently plausible to survive Insight's dismissal motion.

The second part of the above loan statement is accurate: under Alabama law, Insight legally could have taken Ms. McCullough's check in return for extending her a loan. The plausible inaccuracy arises when that statement is juxtaposed next to the term "SECURITY." Why that is so requires a brief review of both federal and Alabama law on this subject. Regulation Z, 12 C.F.R. §§ 226.1-226.59, implements TILA's dictates. TILA, through Regulation Z, "requires creditors to disclose accurately any security interest taken by the lender and to describe accurately the

7

property in which the interest is taken" *Smith v. Cash Store Mgmt., Inc.*, 195 F.2d 325, 328 (7th Cir. 1999) (citing 15 U.S.C. § 1638; 12 C.F.R. § 226.18). Regulation Z defines a "security interest" as "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. § 226.2(a)(25). Alabama law, in turn, defines a "security interest" as:

> an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a cosignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9A [which relates to secured transactions].

Ala. Code § 7-1-201(35).

While this language might encompass personal checks in certain situations, the DPSA apparently does not consider checks to be security interests in the context of deferred presentment transactions. One may infer this from its competing provisions. One section of the statute defines a deferred presentment transaction as

> [a] transaction pursuant to a written agreement involving the following combination of activities in exchange for a fee:
>
> > a. Accepting a check or authorization to debit a checking account and, in connection with that acceptance, advancing funds to the checking account holder.
> >
> > b. Holding the check or authorization to debit checking account for a period of time prior to payment or deposit.

Ala. Code § 5-18A-2(3). The statute sanctions this type of arrangement, which

8

evidently depicts the one formed between Ms. McCullough and Insight. Yet, another provision prohibits a deferred presentment vendor from "requir[ing] a customer to provide security for the transaction or requir[ing] the customer to provide a guaranty from another person." Ala. Code § 5-18A-13(k). Reading these provisions together, the court concludes that the DPSA does not regard a personal check given in a deferred presentment transaction as a security interest.

This conclusion underscores the plausible inaccuracy in the contracts Insight offered to Ms. McCullough. Insight's statement that it was taking and holding her checks under the DPSA was itself a legally accurate statement. But, placing this statement next to the term "SECURITY" misleadingly suggested that Insight was taking a security interest in her checks when the company was not (and could not). Although this is a technical construction of the language at issue, TILA demands such a construction.

In its Motion to Dismiss, Insight confirms that it was not holding Ms. McCullough's checks as security for the loans it issued her. Doc. 6 at 3. It claims that its contracts did not state such but instead faithfully tracked the DPSA's language. *Id.* at 5-6. In its defense, Insight cites the district court's decision in *Butler v. First Credit, Inc.*, No. 4:07-CV-01908-UWC (N.D. Ala. Nov. 13, 2008). However, *Butler* actually undermines Insight's argument. That case did involve a deferred presentment

9

arrangement. But, the analogous contract provision in the case differed in material respects from the present one. In *Butler*, the relevant provision read:

> SECURITY: No security interest has been given
>
> * * * *
>
> We (a) hereby give you $500 in cash, and (b) agree to hold the Check until the presentment date, as set out above, before depositing it. In consideration for our cashing and delaying the deposit of the Check you agree to pay a service charge in the amount shown in the Finance Charge box above, and to cause the Check to be paid by your bank on the presentment date.

Doc. 6-1 at 3 (citation omitted). The creditor in that case thus <u>explicitly disclaimed</u> that it was taking a security interest from the debtor. It also segregated its explanation of the deferred presentment transaction from the line discussing "SECURITY." It thus avoided any possibility of misleading confusion. As has been shown, Insight's statement was objectively misleading. Insight's reliance on *Butler* is therefore misplaced. Accordingly, the court will deny its Motion to Dismiss this one of Ms. McCullough's TILA claims.

### B.     Ms. McCullough has not plausibly alleged that Insight misrepresented its identity.

Ms. McCullough also alleges that Insight illegally failed to disclose its identity on the agreements it had her sign. Doc. 1 ¶ 13(b). She specifically complains that Insight only identified itself as her creditor by one of its licensed trademarks, "Easy

Money Cash Center." *Id.* According to Ms. McCullough, Insight's failure to list its true corporate name on the contracts violated TILA. *Id.*

She provides no legal authority for this notion. Regulation Z simply requires the disclosure of "the identity of the creditor making the disclosures." 12 C.F.R. § 226.18(a). TILA defines a "creditor" as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g). And, Federal Reserve Board staff interpretations of Regulation Z suggest that a creditor satisfies its legal obligations by merely providing its name, address, and/or telephone number. *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. C; *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566-68 (1980) (advising courts to give special deference to interpretations of TILA and Regulation Z issued by the Federal Reserve Board and its staff). Further, Ms. McCullough does not cite any case law in which a court has found that an incorporated entity violates TILA by only disclosing its licensed trademark. In short, there does not seem to be any legal basis for her proffered disclosure requirement.

Moreover, contrary to Ms. McCullough's insinuations otherwise, Insight's corporate title <u>does</u> appear on the contracts at issue. On each of the four relevant contracts, there was a section titled "Truth of Application." Doc. 1-1 at 7-10. This

11

section read, in relevant part:

> You certify that the information stated on this Agreement is true and correct. You also warrant and represent to us, <u>Insight Capital LLC, dba Easy Money Cash Center</u>, that you are not a debtor under any proceeding in bankruptcy, insolvency or reorganization and have no intention to file a petition for relief under any chapter of the United States bankruptcy code as presently published and existing.

*Id.* Insight thus disclosed its authentic name to Ms. McCullough <u>and</u> explicitly indicated that "Easy Money Cash Center" was the business name under which it was operating. In her surreply, Ms. McCullough concedes this fact, although she attempts to downplay it by stating that it was printed in smaller type. Doc. 24 at 5. However, she does not persuasively argue that Insight's disclosures of its identity were in any way inaccurate or misleading. For these reasons, the court will grant Insight's Motion to Dismiss this claim.

### C.   Ms. McCullough has not plausibly alleged that Insight violated TILA by including superfluous disclosures in its agreements.

In Count Four, Ms. McCullough claims that Insight violated Regulation Z by "including disclosures that are not related to the terms of the loan agreement." Doc. 17 ¶ 24 (citing 12 C.F.R. § 226.17(a)(1)). She asserts generically that Insight disclosed "overinclusive" information that was "totally unrelated" to mandatory disclosures that it was required to make regarding annual percentage rates, finance charges, and finance amounts. *Id.* She specifically cites Insight's "relating of facts in

12

the loan agreements that the checks could be used for criminal prosecution purposes."

*Id.* In the contracts at issue, the referenced disclaimer appeared in the following manner:

> THINGS WE HAVE THE RIGHT TO DO TO PROTECT OURSELVES IF YOU DEFAULT: Whenever you are in default under this agreement we can, after providing 15 days written notice, go to court and get a judgment against you for the then unpaid amount of your debt. If the check presented on this agreement is found to be altered, forged, stolen, obtained through fraudulent or illegal means, negotiated without proper legal authority or represents the proceeds of illegal activity, the licensee is required to notify the District Attorney of the circuit in which the check was received.

*E.g.*, Doc. 1-1 at 7.

Regulation Z "requires lenders to accurately disclose, inter alia, the amount financed, an itemization of the amount financed, the finance charge, the annual percentage rate of the loan, and the payment schedule." *Pendleton v. Am. Title Brokers, Inc.*, 754 F. Supp. 860, 863 (S.D. Ala. 1991) (citing 12 C.F.R. § 226.17). There are certain requirements as to how this information is presented. "First, the disclosure[s] must be made clearly and conspicuously, and second, the disclosures must be grouped together, segregated from everything else and not contain information not directly related to the required disclosures." *Id.* (quoting *In re Cook*, 76 B.R. 661, 663 (Bankr. C.D. Ill. 1987)). "The terms 'amount financed,' 'finance charge,' 'annual percentage rate,' a[nd] 'total of payments' must appear on the

disclosure document." *Id.* (quoting 12 C.F.R. § 226.18(b), (d), (e), and (h)). "Further, the 'finance charge' and 'annual percentage rate' must be made 'more conspicuous than any other disclosure.'" *Id.* (quoting 12 C.F.R. § 226.17(a)(2)). The sufficiency of these disclosures must be examined from the "standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge or English professor." *In re Jones*, 06-81987-JAC-13, 2007 WL 1725593, at *5 (Bankr. N.D. Ala. June 13, 2007) (quoting *Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 806 (7th Cir. 2001)), *aff'd*, 279 F. App'x 825 (11th Cir. 2008) (unpublished).

Federal Reserve Board staff interpretations of Regulation Z have further clarified these requirements. These interpretations specify that the "clear and conspicuous" injunction means that the disclosures must:

- appear in a reasonably understandable form;

- be presented in a way that does not obscure the relationship of the terms to each other; and

- be legible.

12 C.F.R. Pt. 226, Supp. I, Subpt. C. Additionally, the disclosures "may be grouped together and segregated from other information in a variety of ways." *Id.* They may appear on a separate sheet of paper or may otherwise be set apart by:

- outlining them in a box;

14

- bold print dividing lines;

- a different color background; or

- a different type style.

*Id.* Finally – and most importantly – these staff interpretations provide examples of information that is "directly related" to these mandatory disclosures. These include, inter alia:

- a description of a grace period after which a late payment charge will be imposed;

- a statement that the transaction is not secured;

- the basis for any estimates used in making disclosures; and

- the conditions under which a demand feature may be exercised.

*Id.*

Ms. McCullough's vague allegation that Insight violated Regulation Z's mandates in this arena is implausible because Insight's agreements with her evidently complied with them. In the contracts at issue – under the sub-title, "Federal Truth-in-Lending Disclosure" – Insight disclosed the required material in segregated, outlined boxes that contained legible script larger than the information found below and outside the boxes. Doc. 1-1 at 7-10. The disclosures were thus "clear and conspicuous" as that term has been construed by the official commentary.

15

The segregated disclosures also did not contain extraneous material. Every item of information found within the outlined boxes disclosed information required by Regulation Z:

- the identity of the creditor, 12 C.F.R. § 226.18(a);

- the amount financed, *Id.* § 226.18(b);

- the finance charge, *Id.* § 226.18(d);

- the APR, *Id.* § 226.18(e);

- the payment schedule, *Id.* § 226.18(g);

- the total of payments, *Id.* § 226.18(h);

- the absence of either a penalty or a refund in the case of prepayment, *Id.* § 226.18(k); and

- the security interest taken, *Id.* § 226.18(m).

Doc. 1-1 at 7-10.[5] Ms. McCullough does not specifically claim, because she cannot, that any of these disclosures is superfluous. Her implication otherwise – to the degree that it is not impermissibly vague – does not withstand scrutiny.

---

[5]There is a segregated box in the various agreements that identifies Ms. McCullough's name, address, and Customer ID. *E.g.*, Doc. 1-1 at 7. Such disclosures are permissible under Regulation Z. 12 C.F.R. § 226.17(a)(1) n.37. Further, under the "Prepayment" disclosure, there is a statement that reads, "See the rest of this Agreement for additional information about nonpayment, default, late payment charges, and any required repayment before the scheduled Presentment Date and prepayment refunds and penalties." *E.g.*, Doc. 1-1 at 7. Ms. McCullough does not maintain that this language violates 12 C.F.R. § 226.17 – nor would the court find such an allegation plausible.

16

This leaves Ms. McCullough's specific allegation concerning Insight's aforementioned disclaimer regarding the possibility of criminal penalties. This disclaimer – appearing where and how it did within the agreements at issue – did not plausibly violate Regulation Z. The issue might be different if the disclaimer appeared within the segregated portion of the agreements. It did not. It appeared far below this section of the various documents. The mandates established by 12 C.F.R. § 226.17 – and interpreted above by the Federal Reserve Board staff – <u>only apply to the information found within the segregated disclosures</u>. *See* 12 C.F.R. § 226.17(a)(1) ("The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18 or § 226.47.") (footnotes omitted). They have no evident bearing on other information within these documents – as long as that information does not compete with the clear and conspicuous disclosures made within the segregated sections. Because Insight's disclaimer concerning possible criminal penalties appeared safely below the mandatory, segregated disclosures – and in inconspicuous, smaller type – it did not plausibly violate Regulation Z. The court will thus grant Insight's Motion to Dismiss this claim.

## II.    Ms. McCullough Has Not Plausibly Alleged an Enforceable Injunction Violation.

Ms. McCullough's next claim involves an injunction supposedly issued by a state court against Insight in in an unrelated case involving a separate plaintiff. Doc. 1 ¶¶ 15-19. Insight – via "Easy Money Cash Centers" – was the defendant in an action brought in 2009 in the Circuit Court of Jefferson County, Alabama. Doc. 1-1 at 1-2. The plaintiff, Ms. Ame Cherie Thomas, apparently alleged that Insight had violated the DPSA. On September 9, 2009, the matter was referred to arbitration in the Consumer Arbitration Tribunal of the American Arbitration Association. *Id.* at 9. On October 22, 2009, Mr. Allen Schrieber, the presiding arbitrator, found – among other things – that Insight had violated the DPSA by taking Ms. Thomas's checks as security interests. *Id.* at 4. Mr. Schrieber also entered an order for Insight to "cease and desist from violating the rule against obtaining a security interest pursuant to the Alabama Deferred Presentment Act." *Id.* at 4. On May 3, 2011, Judge Caryl P. Privett of the Jefferson County Circuit Court entered an Order making this arbitration award "a FINAL JUDGMENT in accordance with the Alabama Rules of Civil Procedure." *Id.* at 2. Notably, Judge Privett stated in this Order the following disclaimer: "The Court specifically declines to make any finding as to the effect of the injunctive language contained therein." *Id.*

In her Complaint, Ms. McCullough claims that Insight has violated Judge Privett's Order by failing to "cease and desist" the taking of checks as security. Doc.

1 ¶ 16. She presently requests that <u>this</u> court enforce the injunction. *Id.* ¶ 19. But –

again – she provides no authority to support this unusual request. Even were this an

enforceable injunction – a contestable claim in and of itself – Ms. McCullough does

not explain why a federal court such as this one could enforce it. A court that grants

an injunction generally has the inherent power to enforce it. *See Smith Barney, Inc.*

*v. Hyland*, 969 F. Supp. 719, 722 (M.D. Fla. 1997) (citation and footnote omitted),

*aff'd*, 148 F.3d 1070 (11th Cir. 1998). For this reason, the court that issues an

injunction generally administers the sanctions that arise from its violation. *Baker by*

*Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998) (citation omitted). Assuming

for the sake of argument that Insight has legitimately violated the injunction in

question, Ms. McCullough has not shown <u>any</u> reason why this court is the forum to

redress the violation. For these reasons, the court finds that Ms. McCullough has not

stated a claim upon which relief can be granted.

**III.   Ms. McCullough Has Not Plausibly Alleged Fraud of Any Kind.**

   ***A.   Ms. McCullough has not plausibly claimed that Insight had a duty to***
   ***disclose any material facts to her outside of those mandated by TILA.***

   In Count Six, Ms. McCullough claims that Insight committed "fraud and

fraudulent suppression of material facts" in violation of Alabama Code § 6-5-102.

Doc. 17 ¶¶ 29-38. She alleges that Insight violated this statutory provision in the

19

following ways:

- by "utilizing false and misleading characterizations concerning the potential for criminal activity and notifying the District Attorney in the loan agreements";

- by "[o]therwise engaging in other fraudulent conduct which 'creates a likelihood of confusion or of misunderstanding' concerning the potential and probability for criminal activity by use of the words and discussions of criminal activity concerning the check and delivering information to the District Attorney";

- by "suppress[ing] the fact that the check could not be used for criminal purposes if the check was returned for insufficient funds or closed account."

*Id.* ¶¶ 30-31. Regarding this final accusation, Ms. McCullough specifically complains that Insight failed to disclose to her that the DPSA protected her from criminal prosecution if the checks she gave to Insight bounced. *Id.* ¶¶ 33-35.

Under the Alabama Code, "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. Thus, in order to establish a cause of action for fraudulent suppression, the plaintiff must show that:

- the defendant had a duty to disclose material facts;

- the defendant concealed or failed to disclose those facts;

- the concealment or failure to disclose induced the plaintiff to act; and

- that the defendant's action resulted in harm to the plaintiff.

*Jewell v. Seaboard Indus., Inc.*, 667 So. 2d 653, 658 (Ala. 1995) (citing *Interstate Truck Leasing, Inc. v. Bender*, 608 So. 2d 716 (Ala. 1992)).

Insight denies that it had any duty to disclose material facts to Ms. McCullough outside of those TILA required it to divulge to her. Doc. 21 at 8-9. Whether such a duty exists is for the court to decide as a matter of law. *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). As suggested from the statutory language above, a duty to disclose "can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent." *Jewell*, 667 So. 2d at 658 (citations omitted). "In the absence of a fiduciary relationship, courts have discretion to consider the value of the non-disclosed information, the relative knowledge and bargaining power of the parties, and other factors that may be appropriate." *Shutter Shop, Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000) (citing *Hines v. Riverside Chevrolet–Olds, Inc.*, 655 So. 2d 909, 918 (Ala.1994)). "In commercial transactions involving parties to arm's length negotiations, however, a bright line rule generally applies: The parties have no general obligation to disclose." *Id.* (citing *Simpson v. Sto Corp.*, 951 F. Supp. 202, 205–06 (M.D. Ala. 1996)). Nevertheless, "each has an

21

affirmative duty to respond 'truthfully and accurately' to direct questions from the other." *Id.* (quoting *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 787 (Ala.1997)).

During her interactions with Insight, Ms. McCullough apparently did not ask direct questions to the lender regarding any ramifications that might arise if her checks bounced. She instead maintains that Insight's duty to disclose this information to her arose from either a fiduciary relationship between them, or Insight's superior knowledge on the subject. Doc. 17 ¶ 37. Neither argument is persuasive. The court has been unable to find any Alabama authority supporting the notion that a payday lender forms a fiduciary relationship with a customer when it extends her a payday loan – and neither does Ms. McCullough cite any such authority. Instead, as Insight points out, Alabama courts "have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1191 (Ala. 2008) (quoting *K & C Dev. Corp. v. AmSouth Bank*, 597 So. 2d 671, 675 (Ala.1992)). However, "a fiduciary duty may arise when the customer reposes trust in the bank and relies on the bank for financial advice, or in other special circumstances." *Id.*

Ms. McCullough does not claim that she reposed any trust in Insight or relied

on it for financial advice. Moreover, no special circumstances apply. There are certainly knowledge disparities between payday lenders and their customers – a dynamic that may be prone to abuse. However, Congress has acknowledged this phenomenon by enacting TILA. The statute already designates specific information that payday lenders must disclose in closed-end transactions. This court is unwilling to superimpose any further obligations onto these existing disclosure duties. Because Ms. McCullough engaged in a series of arms-length transactions with Insight, Insight had no duty to disclose material facts to her on any subject outside of those mandated by TILA. For this reason, the court will grant Insight's Motion to Dismiss Ms. McCullough's fraudulent suppression claim.

### B.   Ms. McCullough has not adequately plead a fraudulent misrepresentation claim.

In Count Seven, Ms. McCullough claims that Insight violated Alabama Code § 6-5-101 by negligently, wantonly, willfully, maliciously, and recklessly misrepresenting information to her. Doc. 17 ¶ 40. According to Ms. McCullough, Insight did this "for no reason other than to create an impression and bring forward to the mind of the borrower the potential for criminal activity with respect to the checks she was issuing and particularly knowing that the checks she was giving were not sufficient to be cashed." *Id.* Under this statutory provision, "Misrepresentations

of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101. In order to make a prima facie claim under this section, a plaintiff must prove the following elements:

- a misrepresentation of a material fact;

- made either innocently, or willfully to deceive, or recklessly without knowledge;

- which under the circumstances was justifiably relied upon by the plaintiff; and

- which caused injury as a proximate consequence.

*Applin v. Consumers Life Ins. Co. of N.C.*, 623 So. 2d 1094, 1097-98 (Ala. 1993), *overruled on other grounds by Boswell v. Liberty Nat. Life Ins. Co.*, 643 So. 2d 580, 582 (Ala. 1994).

Even with the most generous construction put on her Complaint, Ms. McCullough has not satisfactorily plead these elements. She first does not clarify with any coherence what material fact Insight misrepresented to her. From other parts of the Complaint, the court infers that she is referring to the criminal penalties disclaimer language already referenced above. Assuming that she has plausibly claimed a misrepresentation here, she makes <u>no</u> effort <u>whatsoever</u> to demonstrate how she relied on this misrepresentation or how her reliance was justified in the

24

circumstances. Because her claim is thus impermissibly vague, the court will grant Insight's Motion to Dismiss it.

## IV. Ms. McCullough's Claim for "Money Had and Received" Is Implausible Because It Derives From Her Previous Invalid Claims.

Ms. McCullough's final cause of action is for "Money Had and Received." Doc. 17 ¶ 42-44. "An action for money had and received is founded upon the equitable principle that no one ought justly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it because in justness and fairness it belongs to another." *Jewett v. Boihem*, 23 So. 3d 658, 661 (Ala. 2009) (quotation and internal alterations omitted). As a cause of action, it is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which belongs to the plaintiff." *Id.* (citation and internal alterations omitted).

In her Complaint, Ms. McCullough claims this cause of action applies in her case because "the loan agreements and money paid to Defendant thereunder were in violation of the State Court Injunction." Doc. 17 ¶ 43. She also claims the cause of actions applies because "[t]he proceeds of the loan agreements retained and held by

Defendant are the product of fraud and misrepresentation." *Id.* The court has found that the antecedent claims from which this claim derives are invalid as a matter of law. For this reason, the court will dismiss this claim as well.

CONCLUSION

For the foregoing reasons, the court will **GRANT in part and DENY in part** Insight's Motion to Dismiss. The court will enter a contemporaneous Order reflecting this opinion.

**DONE** this the 5th of June, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge